HENRY LERNER (BAR NO. 077166)
WILLIAM W. HUCKINS (BAR NO. 201098)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Phone: (415) 837-1515
Fax: (415) 837-1516
E-Mail: hlerner@allenmatkins.com
        whuckins@allenmatkins.com

Attorneys for Secured Creditor
LIBERTY ASSET MANAGEMENT CORPORATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 10-30380 DM |
| GLOMETRO, INC., | Chapter 11 |
| Debtor. | R.S. No.: 001 |
| Taxpayer's Identification No. 94-3265040 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY [11 U.S.C. § 362(d)(3)]** |
| | Date: June 3, 2010<br>Time: 9:30 a.m.<br>Ctrm: 22<br>235 Pine Street<br>San Francisco, California<br>Judge: Hon. Dennis Montali |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

732137-v1/SF

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case: 10-30380    Doc# 35    Filed: 05/19/10    Entered: 05/19/10 13:32:53    Page 1 of 14

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A. THE DEBTOR AND THE PROPERTY | 1 |
| | B. THE LOAN AND SECURITY INTERESTS IN DEBTOR'S PROPERTY | 2 |
| | C. NATIONAL METRO'S INTEREST IN THE PROPERTY | 4 |
| | D. DEBTOR'S DEFAULT AND THE SALE OF THE LOAN TO LIBERTY | 4 |
| | E. THE RECEIVERSHIP ACTION AND THE CHAPTER 11 FILING | 6 |
| | F. DEBTOR ADMITS THAT THIS CASE INVOLVES SINGLE ASSET REAL ESTATE | 6 |
| | G. THE OUTSTANDING DEBT OWED TO LIBERTY BY DEBTOR | 7 |
| III. | ARGUMENT | 9 |
| | A. LIBERTY IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY BECAUSE DEBTOR HAS NOT SATISFIED THE REQUIREMENTS OF 11 U.S.C. § 362(d)(3) FOR A SINGLE ASSET REAL ESTATE CASE | 10 |
| IV. | CONCLUSION | 11 |

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**
737137.01/SD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Can-Alta Properties, Ltd. v. State Savings Mortgage Co. (In re Can-Alta Properties, Ltd.)*,
   87 B.R. 89 (B.A.P. 9th Cir. 1988) .................................................................................... 11

*First Connecticut Small Business Inv. Co. v. Ruark*,
   7 B.R. 46 (D. Conn. 1980) ............................................................................................... 9

*In re Arnold*,
   806 F.2d 937 (9th Cir. 1986) ........................................................................................... 11

*In re CBJ Dev., Inc.*,
   202 B.R. 467 (9th Cir. BAP 1996) .................................................................................. 10

*In re Gauvin*,
   24 B.R. 578 (9th Cir. B.A.P. 1982) ................................................................................. 9

*In re Heather Apartments Ltd. P'ship*,
   366 B.R. 45 (Bankr. D. Minn. 2007) ............................................................................... 10

*In re Leonard*,
   151 B.R. 639 (Bankr. N.D. N.Y. 1992) ........................................................................... 9

*In re Little Creek Dev. Co.*,
   779 F.2d 1068 (5th Cir. 1986) ......................................................................................... 11

**Statutes**

11 U.S.C. § 362(d) ................................................................................................................. 9

11 U.S.C. § 362(d)(1) ...................................................................................................... 1, 11

11 U.S.C. § 362(d)(3) ................................................................................................ 1, 10, 11

11 U.S.C. § 362(g) ................................................................................................................ 9

# I. INTRODUCTION

Secured creditor Liberty Asset Management Corporation ("Liberty" or "Secured Creditor") moves the Court for relief from the automatic stay to permit Liberty to take any and all actions as may be necessary or appropriate to enforce Liberty's rights and remedies under its loan documents and applicable nonbankruptcy law against Debtor Glometro, Inc. ("Debtor") and Debtor's principal asset, the real property located at 722-728 Montgomery Street, San Francisco, California, and any related personal property collateral ("Property"), including foreclosure of Liberty's first priority deed of trust against the Property. The Property consists of a partially constructed historic renovation project for a three-story mixed use condominium-retail development. The Property is also commonly known as the "Belli Building."

Liberty also seeks relief from the automatic stay to obtain the appointment of a receiver for the Property, and to permit the appointed receiver to take possession and control of the Property.

Although Liberty would be warranted in moving for relief from stay under Bankruptcy Code §§ 362(d)(1) and 362(d)(2), and Liberty reserves the right to so move, in the interest of judicial economy, and given the undisputed procedural posture of this case, this motion is limited to Section 362(d)(3) of the Code. Specifically, this is a single asset real estate case. More than 90 days have passed since the voluntary Chapter 11 Petition was filed. Debtor neither commenced making monthly interest payments to Liberty, nor filed any plan of reorganization, nor obtained an order extending the time to do either. In these circumstances, Section 362(d)(3) leaves the Court no alternative but to grant relief from stay. Liberty requests that the Court issue an order granting Liberty relief from the automatic stay as outlined above, and waiving the 14-day stay prescribed by Rule 4001(a)(3) to permit the order to be immediately binding and effective.

# II. FACTUAL BACKGROUND

## A. THE DEBTOR AND THE PROPERTY

Debtor is a California corporation owned and controlled by Nancy Ho Belli, the widow of the late Melvin Belli. As related by Mrs. Belli at the 341 meeting held on March 16, 2010, the late Mr. Belli maintained his offices at the Property, located in the historic Jackson Square area. The Property was severely damaged by the 1989 earthquake and red-tagged. Debtor, which was

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

732137-30083

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case 10-30880    Doc# 35    Filed 05/19/10    Entered 05/19/10 13:32:53    Page 4 of 14

incorporated in 1998 as a single purpose entity so that Mrs. Belli could maintain legal separation among her real estate assets, then acquired the Property out of bankrupcy. Mrs. Belli's intention was to restore the Property to include a museum honoring Mr. Belli. *See* Audio CD Transcription of Proceedings of 341 Meeting Held on 3-16-10 at 10:30 a.m., at pp. 5-6, 14-15, 17-18 (attached to Declaration of Henry Lerner), hereinafter cited as "Transcript."

### B. THE LOAN AND SECURITY INTERESTS IN DEBTOR'S PROPERTY

On or about December 28, 2005, Liberty's predecessor in interest, East-West Bank ("EWB"), loaned Debtor the principal sum of $7,850,000, identified as Loan No. 31236 (the "Loan"), to fund the renovation of the Property. Declaration of Fely Fernandez-Kwan in Support of Motion for Relief from the Automatic Stay ("Kwan Decl."), ¶ 4. The Loan is evidenced by, among other things, a Promissory Note in the principal amount of $7,850,000 (the "Original Note"), *id.*, ¶ 4, Exh. A, and a Construction Loan Agreement ("Loan Agreement") and related loan documents. *Id.,* ¶ 6. Exh. B.

The Loan Agreement, also dated as of December 28, 2005 ("Original Loan Agreement"), recited (at page 1) that Debtor intended to renovate the Property "into a mixed-use complex consisting of 12 condominiums and approximately 15,000 square feet of commercial, office and retail space . . .," and that EWB was "willing to finance a portion of the costs of the renovation work . . . ." *Id.* The Original Loan Agreement (at pages 1, 17) set a Completion Date of June 30, 2007. *Id.*, The Note (at 1) and the Original Loan Agreement (at 4) also set September 30, 2007 as the initial Maturity Date for the Loan.[1] Kwan Decl., ¶¶ 4, 6, Exhs. A, B.

To secure, <u>inter alia</u>, payment of the obligations evidenced by the Note and as part of the original loan transaction, Debtor, as trustor, made, executed and delivered to EWB, as beneficiary, a Construction Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated as of December 28, 2005 (the "Original Deed of Trust"), encumbering and creating a first priority lien against the Property, including real property and personal property collateral. The Original

---

[1] The Original Loan Agreement also contemplated (at Section 2.2) that the Loan would be partially paid off as the condominiums were sold. It included, at Exhibit A, page A-1, a schedule of minimum release prices for each of the units, totaling $9,812,499. *Id.,* at Exh. B.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Deed of Trust was recorded in the Official Records of San Francisco on January 27, 2006, as Document No. 2006-I119714-00. Kwan Decl., ¶ 7, Exh. C.

As part of the Loan origination, a financing statement was filed with the California Secretary of State on February 2, 2006 as Document No. 067058184019, with respect to the "Personal Property" encumbered by the security agreement contained in the Original Deed of Trust ("State UCC"). Kwan Decl., ¶ 8, Exh. D.

Under the loan documents, Debtor is also obligated to reimburse Secured Creditor for, among other things, the attorneys' fees, costs and other monies expended by Secured Creditor in enforcing its rights under the loan documents. *See* Original Note, § 9(c), Original Loan Agreement, § 8.4, Kwan Decl., Exhs. A, B.

The Loan was thereafter modified twice. On or about July 25, 2007, EWB and Debtor entered into a Change in Terms Agreement (the "2007 Change in Terms Agreement"). The 2007 Change in Terms Agreement, among other things, modified the original Note to extend the maturity date of the Loan from September 30, 2007 to September 30, 2008 and to increase the maximum principal amount of the Loan to $9,850,000.00. Kwan Decl., ¶¶ 4-5, Exh. A.

The second modification was made pursuant to a further Change in Terms Agreement with East-West Bank, dated January 1, 2009 (the "2009 Change in Terms Agreement"). The 2009 Change in Terms Agreement, among other things, modified the Note to further extend the maturity date for another six months, from January 1, 2009 to July 1, 2009 (the "Maturity Date"), to raise the minimum non-default interest rate on the Loan to 7.5% per annum, to provide for default interest of 5 percentage points above the regular interest rate, and to confirm the Debtor's obligation to pay late charges. Kwan Decl., at ¶¶ 4-5, Exh. A. The Original Note as so modified is hereafter referred to as the "Note."

The Original Loan Agreement was likewise modified to extend the Completion Date to July 1, 2009, pursuant by a written Modification to the Construction Loan Agreement, dated as of January 1, 2009 (the "Loan Agreement Modification"). Kwan Decl., ¶¶ 5-6, Exh. B. The Original Loan Agreement, as thus modified, is referred to hereafter as the "Loan Agreement."

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-3-
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case 10-30880    Doc# 35    Filed 05/19/10    Entered 05/19/10 13:32:53    Page 6 of 14

The Original Deed of Trust was also modified, by a Modification of Deed of Trust, dated as of July 25, 2007, recorded on August 14, 2007, as Document No. 2007-I435736-00 ("First 2007 DOT Modification"), which among other things, increased the principal amount of the Deed of Trust to $9,850,000.00. The Original Deed of Trust was further modified by that certain Amendment to Deed of Trust and Partial Reconveyance, dated September 21, 2007, recorded in the Official Records on December 27, 2007, as Document No. 2007-I511158-00 (the "Second 2007 DOT Modification"). Kwan Decl., ¶ 7, Exh. C. The Second 2007 DOT Modification corrected the legal description of the Property. The Original Deed of Trust as thus modified is referred to hereafter as the "Deed of Trust."

### C. NATIONAL METRO'S INTEREST IN THE PROPERTY

National Metro, Ltd. is a British Virgin Islands corporation ("National Metro"), owned by Ronald Yip, who is Mrs. Belli's brother. Transcript, at 56-57. Mr. Yip initially provided capital to buy out the interest in the Property of others in the Belli family, and to fund the planning and permitting for the renovation. Transcript, at 32-36. According to Mrs. Belli, Mr. Yip did "[n]ot officially" become a shareholder of the company, but eventually, after litigation arose, demanded to be paid back the money he had put in. *Id.* at 36. National Metro then became a secured creditor, receiving a second deed of trust on the Property in the amount of $4,500,000 dated February 1, 2006, and recorded on May 23, 2007 ("Second Deed of Trust").

In connection with the First 2007 DOT Modification, National Metro agreed to subordinate its Second Deed of Trust to the EWB Deed of Trust. Specifically, on or about July 25, 2007, National Metro, EWB, Debtor, and First American Title Insurance Company entered into a written Subordination of Deed of Trust, that was recorded August 14, 2007 as Instrument No. 2007-I435737-00, Reel J454, Image 0149 (the "Subordination"). Kwan Decl., ¶ 9, Exh. E.

### D. DEBTOR'S DEFAULT AND THE SALE OF THE LOAN TO LIBERTY

The Loan matured on July 1, 2009. Kwan Decl., at ¶ 10. Debtor defaulted on the loan by failing to pay the entire amount of outstanding principal, accrued interest and charges due under the loan upon maturity. *Id.*

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-4-
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case 10-30380   Doc# 35   Filed 05/19/10   Entered 05/19/10 13:32:53   Page 7 of 14

On September 24, 2009, EWB caused a Notice of Default to be recorded. As specified by the NOD, the balance due and owing by Debtor as of September 30, 2009 was $6,225,123.45. *Id.*, Exh. F.

Debtor also defaulted on the Loan because it failed to complete construction, the renovation project having been essentially dormant since early 2008. Declaration of Anne Cho, ¶ 6 ("Cho Decl."). On April 17, 2008, the general contractor, B.A.R. Contractor Inc. dba B.A.R. Builders, recorded a mechanic's lien against the Property for work performed through February 8, 2008. Docket #29-6, filed May 5, 2010, at 11-12. On June 10, 2008, B.A.R. Contractors sued the Debtor and Mrs. Belli for breach of contract and fraud, and also sought to foreclose its mechanic's lien. Docket #29-1, filed May 5, 2010.[2] Mrs. Belli recounted at the 341 meeting that the general contractor had "abandoned the project" and sued her personally, as well as Glometro and East-West Bank. Transcript, at 48.

Eventually, Mrs. Belli said, Debtor ran out of money and needed help from her children to pay for the utilities and taxes for the Property. She said that after over a decade of work, the renovation was only 50 or 60 percent completed, depending on whether you talk to the builder or one of the experts. Transcript, at 18-19. Without a general contractor to finish the work or a source of financing to complete the project, in about September 2009 the Debtor entered into a listing agreement to sell the Property. Transcript, at 50-51.

On or about September 30, 2009, EWB sold, endorsed and assigned the Note and Loan to Secured Creditor. Kwan Decl., ¶ 11, Exh. G. In connection with the sale of the Note and the Loan, the Deed of Trust and other loan documents were assigned by EWB to Secured Creditor pursuant to a written Assignment of Deed of Trust, dated as of September 30, 2009, and recorded on October 23, 2009 in the Official Records as Document No. 2009-I863900-00 (the "Loan Assignment"). Kwan Decl., ¶ 11, Exh. H. Secured Creditor also assigned the State UCC to

---

[2] B.A.R. Contractors removed its state court action to this Court on May 5, 2010. B.A.R.'s state court Complaint is attached to its Notice of Removal, Doc. #29-1. Although not reflected by the attachments to the Notice of Removal, Liberty was served as a Doe defendant on the mechanic's lien foreclosure count of B.A.R.'s state court Complaint, and filed an Answer.

Secured Creditor, by a UCC Amendment filed on December 22, 2009, as Document No. 0972177083. Kwan Decl., ¶ 12, Exh. I.

Mrs. Belli acknowledged that the Debtor failed to pay property taxes for the Property. Transcript, at 29. Both installments of property tax due for the 2009-2010 tax year are now delinquent, in the total amount of $19,408.94. Such delinquency constitutes a further default under the loan documents. Cho Decl., ¶ 14, Exh. N.

### E. THE RECEIVERSHIP ACTION AND THE CHAPTER 11 FILING

By the onset of winter in December 2009, the Property was deteriorating due its vulnerability to elements, particularly rain water. This was because the "shrink-film" that once enclosed the window openings on the Property's east and west facades, the numerous roof penetrations, and the unfinished masonry parapet walls, had substantially deteriorated in many locations and completely disappeared in others. The interior of the building was also wet from rainwater, with some wood flooring needing replacement; but the Debtor had no money to replace the shrink-film, and nothing was being done to remedy or avoid any potential moisture or mold damage to the interior. Transcript, at 62-65.

On December 29, 2010, Liberty filed the Receivership Action in San Francisco Superior Court to avoid further deterioration and waste of the Property. Cho Decl., ¶ 8, Exh. L. A hearing on Liberty's motion for appointment of a receiver to protect and preserve the Property pending foreclosure was scheduled for February 11, 2010. Cho Decl. ¶ 8.

On February 5, 2010, Debtor commenced this case, staying the Receivership Action and foreclosure of the Property. *Id.*

### F. DEBTOR ADMITS THAT THIS CASE INVOLVES SINGLE ASSET REAL ESTATE

At the 341 meeting held on March 16, Debtor's counsel acknowledged, in a colloquy with counsel for the U.S. Trustee, that this case is a single-asset real estate case, although that fact was not indicated by the Petition.

> MS. LOO: Mr. Kawamoto, the petition did not indicate this [is a] single-asset real estate case. Is there a reason why that wasn't done?

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-6-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

737737.03/SF

Case: 10-30380   Doc# 35   Filed: 05/19/10   Entered: 05/19/10 13:32:53   Page 9 of 14

> MR. KAWAMOTO: That would be oversight on my part. I didn't realize that.
>
> MS. LOO: Yeah, okay. If you can make sure that's amended, as well, too.
>
> MR. KAWAMOTO: Okay.

Transcript, at 43:5-12.[3] The Debtor's Petition has not yet been amended. There is, however, no dispute as to this critical fact. On November 13, 2009, Mrs. Belli has already given confirming deposition testimony in the state court action in response to questions posed by the attorney for B.A.R. Contractors:

> Q. What is the business of Glometro?
>
> A It's owning the property of the Belli Building only.
>
> Q. It does no other business, correct?
>
> A. No.
>
> [Declaration of Katheryn Jarvis Coggon in Support of Motion for Relief from Stay ("Coggon Decl.") ¶ 3, Exh. A, at 11:20-24.]

Debtor also acknowledged at the 341 meeting that this case was filed because Debtor wanted to put an end to Liberty's receivership action as well as the lawsuit brought against the Debtor and Mrs. Belli personally by the general contractor for the renovation project;[4] because Debtor ran out of money for the project; and because, although Debtor admittedly has no equity in the Property, Debtor still hopes to arrange a short sale of the Property, in part based on a pre-petition offer to purchase the Property for $7.8 million that was supposedly in escrow. Transcript, at 4, 18-21, 40, 52-55, 66-68.

### G. THE OUTSTANDING DEBT OWED TO LIBERTY BY DEBTOR

As of the petition date, Debtor owed the following amounts under the terms of the loan documents:

---

[3] The Debtor's Statement of Financial Affairs checked the box at Section 18(b), thereby falsely indicating that Glometro is *not* a single-asset real estate business. Doc #16, filed Feb. 12, 2010, at p. 5 of 8. Counsel for the U.S. Trustee at the 341 meeting also required that the Petition and schedules be amended in other respects, but as yet this has not been done. Transcript, at 70-73

[4] The lawsuits are listed by the Debtor's Statement of Financial Affairs, at § 4 at p. 2.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-7-

782307.03/SF

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case: 10-30380    Doc# 35    Filed: 05/19/10    Entered: 05/19/10 13:32:53    Page 10 of 14

| | | |
|---|---|---:|
| 1 | Principal: | $6,016,404.57 |
| 2 | Accrued Regular Interest (7/01/09-2/04/10)(219 days): | 274,498.98 |
| 3 | Accrued Default Interest (7/11/09-7/14/09)(4 days): | 3,327.84 |
| 4 | Accrued Default Interest (7/15/09-2/04/10)(205 days): | 171,300.05 |
| 5 | Accrued Foreclosure and Attorneys' Fees: | 103,956.30 |
| 6 | Servicing Advances and Collection Costs: | 19,541.27 |
| 7 | Total | $6,589,029.01 |

The daily accrual of regular interest at the Note rate of 7.5% from and after July 1, 2009 was, and remains, $1,253.42, and the daily accrual of default interest from and after July 15, 2009 was, and remains, $835.61. Cho Decl., ¶ 10.

As of May 5, 2010—the 90th days after the petition date, Debtor owed the following amounts under the terms of the loan documents:

| | |
|---|---:|
| Principal: | $6,016,404.57 |
| Accrued Regular Interest (7/1/09-5/05/10)(309 days): | 387,306.78 |
| Accrued Default Interest (7/11/09-7/14/09)(4 days): | 3,327.84 |
| Accrued Default Interest (from 7/11/09-5/05/10)(295 days): | 246,504.95 |
| Accrued Foreclosure and Attorneys' Fees: | 123,822.87 |
| Servicing Advances and Collection Costs: | 19,541.27 |
| Total | $6,796,908.28 |

Cho. Decl. ¶ 12. As set forth above, from the petition date through May 5, 2010, additional post-petition obligations in the amount of at least $207,879.27 have accrued under the loan documents and remain unpaid (not including interest on advances made by Liberty). *Id*.

As noted above, both installments of property taxes for 2009-2010 are delinquent and outstanding, in the amount of $19,408.94. Cho Decl., ¶ 14, at Exh. N.

Liberty has received no payments from Debtor. *Id.*, at ¶ 9. Debtor has not offered to provide Liberty any form of adequate protection, including monthly payments at the non-default rate as provided by the Note. Cho Decl., ¶ 13. The Debtor has not filed a plan of reorganization.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-8-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case: 10-30380  Doc# 35  Filed: 05/19/10  Entered: 05/19/10 13:32:53  Page 11 of 14

782370.03/SF

## III. ARGUMENT

Bankruptcy Code § 362(d) requires the Court to grant a party in interest relief from the automatic as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> \* \* \*
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) . . .
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that—
> . . .
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate . . . .

11 U.S.C. § 362(d).

A party seeking relief under Section 362(d) need establish only one of the "alternative grounds for relief." *First Connecticut Small Business Inv. Co. v. Ruark*, 7 B.R. 46, 49 (D. Conn. 1980); *In re Leonard*, 151 B.R. 639, 643 (Bankr. N.D. N.Y. 1992).

Furthermore, other than the burden of proving a debtor's lack of equity in the subject property, the debtor bears the burden of proof on all issues in opposing a motion for relief from the automatic stay. 11 U.S.C. § 362(g)("In any hearing under subsection (d) or (e) of this section concerning relief from the automatic stay of any act under subsection (a) of this section (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."); *see In re Gauvin*, 24 B.R. 578, 580 (9th Cir. B.A.P. 1982)("[Section] 362(g) puts the burden on Debtor in (d)(1) to prove absence of cause and in (d)(2)(B) to prove necessity to effect reorganization.").

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-9-
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case: 10-30380    Doc# 35    Filed: 05/19/10    Entered: 05/19/10 13:32:53    Page 12 of 14

Here, Secured Creditor is plainly entitled to relief from the automatic stay under Section 362(d)(3).

### A. LIBERTY IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY BECAUSE DEBTOR HAS NOT SATISFIED THE REQUIREMENTS OF 11 U.S.C. § 362(d)(3) FOR A SINGLE ASSET REAL ESTATE CASE

Under Section 362(d)(3), a secured creditor in a single asset real estate case must be granted relief from the automatic stay unless, within 90 days of the petition date, a debtor either: (i) files a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (ii) commences making monthly payments at the then applicable nondefault contract rate of interest. 11 U.S.C. § 362(d)(3). The "single asset real estate" provisions were added to the Bankruptcy Code to provide additional protections to secured creditors by requiring the court to grant relief from the stay if a reasonable plan of reorganization with a prospect of being confirmed is not filed promptly or payments are not commenced within a relatively short period of time following the commencement of the bankruptcy case. The special provisions applicable in "single asset real estate" cases are intended to remedy the perceived abuses and unfairness occasioned by debtors filing chapter 11 cases to delay mortgage foreclosures where there was little, if any, chance of successfully reorganizing and where the filing causes additional harm and expense to the secured creditor. *See In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 49 (Bankr. D. Minn. 2007); *In re CBJ Dev., Inc.*, 202 B.R. 467, 471 (9th Cir. BAP 1996)("single asset case" refers to real estate entities attempting to "cling" to property in a depressed market).

Here, there is no dispute that this case involves single-asset real estate. Section 363(d)(3) therefore supplies a proper basis for granting relief from stay.

Second, there is no dispute that Debtor did not file a plan within 90 days.

Third, there is no dispute that Debtor failed to make payments to Liberty within 90 days.

Fourth, no order was requested, or entered, within 90 days after the Petition was filed, extending, for "cause," the Debtor's time to make payments or file a plan.

Furthermore, this bankruptcy case is precisely the type of case that the single-asset real estate provisions of Bankruptcy Code § 362(d)(3) were enacted to address—a case filed on the eve

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-10-
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR RELIEF FROM STAY UNDER 11 U.S.C. § 362(d)(3)

Case: 10-90380  Doc# 35  Filed: 05/19/10  Entered: 05/19/10 13:32:53  Page 13 of 14

of foreclosure to prevent losing the subject property where the debtor has no reasonable prospect of reorganization.[5]

Thus, Secured Creditor is entitled to relief under Bankruptcy Code § 362(d)(3).

## IV. CONCLUSION

Based on the foregoing, Liberty respectfully requests the Court to enter an order granting from the automatic stay to permit it to take any and all actions as may be necessary or appropriate to enforce its rights and remedies under its loan documents with Debtor and under applicable nonbankruptcy law against Debtor and the Property, including foreclosure of Secured Creditor's first priority deed of trust against the Property and all related personal property collateral.

Liberty also requests that the Court waive the 14-day stay prescribed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and that the Court's order be immediately binding and effective.

Dated: May 18, 2010

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Henry Lerner*
HENRY LERNER
Attorneys for Secured Creditor
LIBERTY ASSET MANAGEMENT CORPORATION

---

[5] Indeed, this case bears virtually all the earmarks of a "bad faith" filing sufficient to constitute "cause" for the granting of relief from stay under Section 362(d)(1). The debtor has only one asset; the Debtor has no employees, and only a single principal; there is no cash flow; there are no sources of income to fund a plan of reorganization; the property has been noticed for foreclosure; and bankruptcy was the only possible way for the Debtor to forestall loss of the Property. See *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); s*ee also, Can-Alta Properties, Ltd. v. State Savings Mortgage Co. (In re Can-Alta Properties, Ltd.)*, 87 B.R. 89, 90 (B.A.P. 9th Cir. 1988)(*citing In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986);

-11-