HENRY LERNER (BAR NO. 077166)
WILLIAM W. HUCKINS (BAR NO. 201098)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Phone: (415) 837-1515
Fax: (415) 837-1516
E-Mail: hlerner@allenmatkins.com
         whuckins@allenmatkins.com

Attorneys for Secured Creditor
LIBERTY ASSET MANAGEMENT CORPORATION

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 10-30380 DM |
| GLOMETRO, INC., | Chapter 11 |
| Debtor. | R.S. No.: 001 |
| Taxpayer's Identification No. 94-3265040 | **DECLARATION OF JOEL M. JOSEHART** |
| | Date: June 25, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 22<br>235 Pine Street<br>San Francisco, California<br>Judge: Hon. Dennis J. Montali |

I, JOEL M. JOSEHART, declare as follows:

1. I am the President and owner of Josehart Construction Management, Inc., a California corporation, located at 201 Corte Madera Avenue, Corte Madera, CA 94925. I am a licensed architect in Illinois and in Wisconsin. I hold a California general contractor's license. I have worked in construction management and architecture for the last 27 years, with substantial experience dealing with large, complex construction projects. My present firm provides construction management services throughout all phases of design and construction, including post-construction investigation and evaluation of contract claims and/or construction defects. I

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

784970.03/SF
DECLARATION OF JOEL M. JOSEHART

Case: 10-30380   Doc# 57   Filed: 06/18/10   Entered: 06/18/10 18:01:54   Page 1 of 4

have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2. I have been engaged as an expert to assess the general status of the unfinished construction project ("Project" or "Property") located at 722-728 Montgomery Street, San Francisco, California, also known as the Belli Building, on behalf of secured creditor Liberty Asset Management Corporation ("Liberty"). As part of this engagement, I visited the Project on January 27, 2010 and on February 3, 2010, and gave a declaration to be filed in support of Liberty's motion to obtain the appointment of a receiver. Reply Declaration of Joel M. Josehart, AIA, In Support Motion for Appointment of Receiver and Preliminary Injunction, dated February 3, 2010, filed in *Liberty Asset Management Corporation, Plaintiff, v. Glometro, Inc., et al., Defendants*, San Francisco County Superior Court, Case No. CGC-09-495619, filed Feb. 4, 2010. A true copy of my state court declaration including exhibits is attached hereto as Exhibit 1, and by this reference incorporated herein as though set forth in full.

3. As recounted in my state court declaration, the Project is suffering from several serious problems as a result of the cessation of construction and the failure to protect the project from the elements. These include the complete failure of the shrink-film enclosure, significant water intrusion, and potential mold damage. The observations and conclusions that I made when I gave the state court declaration were based only on what I could see from the outside of the building, as I did not have access to the interior at that time.

3. On June 11, 2010, I made a further visit to the Project, at which time I walked the interior of the building as well as the roof. Based on this additional site visit, I have the following further observations about the condition of the Project.

4. The roof of the building is unfinished, consisting of plywood deck sheathing covered with a single, self-adhering sheet membrane. The membrane is extremely vulnerable to UV degradation, and has long since failed to provide water protection for the underlying sheathing. As a result, the decking is beginning to delaminate and fail, with water penetrating the plywood. Water stains on the underside of the sheathing are visible from below. These conditions are shown on the photographs I took during my June 11 visit, attached hereto as Exhibits 2-1

through 2-4. My recommendation is that the plywood sheathing be removed and replaced to allow for the proper installation of a new roof system and compliance with the roof manufacturer's warranty requirements.

5. Plywood subfloors have been installed throughout the building. However, due to long exposure of the interior to the elements, the interior has been receiving water which has ponded on the subfloors. In some locations, the plywood veneer is delaminating. These will require removal and replacement. These conditions are shown in my June 11 photographs attached hereto as Exhibits 3-1, 3-2 and 3-3.

6. There are also water intrusion conditions that were not addressed by the original shrink-wrap that now need to be addressed. These include the exterior parapet walls whose framing members run from the top floor past the roof system; the parapet framing was left completely unenclosed and exposed to the sky, permitting rain water to enter. There are also open gaps between the exterior walls of the building and the exterior walls of adjacent buildings which permit water to enter the Project. These conditions, shown in my June 11 photographs attached hereto as Exhibit 4-1 through 4-7, also need to be remedied to prevent deterioration of the Project.

7. During my June 11 site visit, I observed pigeons in the building, as well as bird excrement fouling the subfloors and tops of beams in numerous places. Examples are shown in my photographs attached hereto as Exhibits 5-1 through 5-3. The mess will need to be cleaned and disinfected, with damaged materials replaced as necessary.

8. There is standing water in the basement of the building. Water stains on the walls and floors indicate that the standing water was more extensive than observed during my visit. Some of the historic millwork stored in the basement is actually sitting in the standing water. Other historic millwork is improperly stored because it is resting at steep angles that could result in warping. The water needs to be removed and the millwork inspected and restored as necessary. The bottom of the elevator pit is also flooded and needs to be pumped out. Photographs taken on June 11 of these conditions are attached hereto as Exhibits 6-1 through 6-3.

9. I have not had an opportunity since my June 11 site visit to determine the cost and time that will be required to repair the damage to the Project resulting from the cessation of

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

784970.01/OC
-3-
DECLARATION OF JOEL M. JOSEHART

Case: 10-00380    Doc# 57    Filed: 06/18/10    Entered: 06/18/10 18:01:54    Page 3 of 4

1 construction and the failure or inadequacy of the temporary protective measures that were taken. Based on my observations and experience, however, I believe that the damage will cost tens of thousands of dollars and take several weeks to repair.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2010, at Corte Madera, California.

                                              */s/ Joel M. Josehart*
                                              JOEL M. JOSEHART